## SHELDON v. STEPHENS et al., *Appellants.*

**A Contract Construed.** Plaintiffs and defendants entered into a contract by which plaintiffs were to buy, store, shell and ship corn for a commission to be paid by defendants. The contract stipulated (1) that the defendants " hereby agree to furnish money to pay for all the corn " the plaintiffs " are able to purchase, the same to be delivered at the town of Stewartsville from this date, (November 27th, 1876,) until the 1st day of June, 1877, or if the " defendants " wish to extend the time until the 1st day of September, 1877, they may do so at their option." It further stipulated (2) that the defendants should pay plaintiffs " $3\frac{3}{4}$ cents per bushel as full compensation for all the corn purchased, cribbed, shelled and carred. The $3\frac{3}{4}$ cents per bushel to be paid by the " defendants " for the labor of purchasing, shelling, cribbing and carring of such corn, is to be paid when returns are had from the corn." Plaintiffs also agreed to buy for defendants only. Defendants afterward (February 26th, 1877,) released plaintiffs from their obligation to make further purchases, and none were made thereafter. In March it was agreed that the time for shelling should be extended till September 1st, 1877, and in consideration of this that defendants should pay plaintiffs part of the commission ($2\frac{3}{4}$ cents per bushel) June 1st, 1877, and the re-

mainder September 1st. These modifications were made by written correspondence. In an action instituted June 13th, 1877, to recover 2¾ cents per bushel commission on purchases made prior to February 26th; *Held*, (1) That the first clause of the contract as originally made did not give the defendants the option of having any or all of the corn shelled at any time before September 1st; that it gave the option to have more purchased and delivered after June 1st and before September 1st, and the right to have any so purchased and delivered, shelled at any time before September 1st, but no other; (2) That the second clause did not give defendants an unlimited range of time within which to have their shelling done; that this provision was subordinate to the chief object and purpose of the contract, and either gave defendants the right to direct the particular time at which it should be done within the period over which the contract extended by its original terms, or gave them the right to have it done within a reasonable time after the corn was delivered to the plaintiffs; (3) That the surrender by plaintiffs of their right to shell within the time fixed by the original contract construed either way, was the surrender of a valuable right, and constituted a sufficient consideration for the promise of defendants to pay part of the commission on the 1st day of June instead of " when returns are had from the corn," as originally stipulated, and that the action was, therefore, not prematurely brought.

*Appeal from Buchanan Circuit Court.*—Hon. Jos. P. Grubb, Judge.

Affirmed.

*Allen H. Vories* for appellants.

*Strong & Mosman* and *Ramey & Brown* for respondents.

Martin, C.—This was an action for compensation in the form of commissions for services in purchasing, shelling and loading corn on cars for shipment on account of the defendants. It was commenced on the 13th day of June, 1877, in DeKalb circuit court, and taken thence by change of venue to Buchanan county. The action was brought upon a contract in writing, which consisted of a single instrument in the first instance, which was changed and modified by letters in writing which passed between

the parties, the plaintiffs contracting under the name and style of Ed. G. Sheldon & Co., and the defendants in their proper names or in the name and style of B. F. Stephens & Co.

As the sole issue in the case involves the construction of the contract, I will set it out in full:

"Know all men by these presents, That the following contract and agreement this day entered into by and between Thomas Stephens and B. F. Stephens, in the county of Ford, and state of Illinois, parties of the first part, and Ed. G. Sheldon & Co., of the town of Stewartsville; in the county of DeKalb, and State of Missouri, parties of the second part, witnesseth : That the said parties of the first part hereby agree to furnish money to pay for all the corn that said parties of the second part are able to purchase for the parties of the first part, the same to be delivered at the town of Stewartsville, from this date until the 1st day of June, 1877, or if the parties of the first part wish to extend the time until the 1st day of September, 1877, they may do so at their option. Said corn to be delivered in cribs, subject to the inspection and approval of B. F. Stephens, one of the parties of the first part. When the corn is delivered in said cribs, to be considered the property of said parties of the first part, and entirely at their risk. Said cribs to be put up in such a manner as to protect the corn, subject to the approval of said B. F. Stephens—to be covered with boards. Said corn to be sound, merchantable corn, subject also to the approval of said parties of the first part, and received by them upon delivery in said cribs. The said parties of the second part agree to purchase all the corn they can for the said parties of the first part as long as the said parties of the first part shall be willing to pay the current price, but when they so refuse to do, the said parties of the second part may buy for themselves or other parties, as they may see fit. The said parties of the second part are to be governed by the parties of the first part as to the price they are to pay for corn at all times. If at any time

the market is in such condition that the parties of the first part do not care to pay the current price, then at such times only the said parties of the second part shall be at perfect liberty to buy for themselves, and the said parties of the first part may direct the said parties of the second part to commence buying again at their option. The said parties of the second part may enter into contracts with farmers to take their crops of corn, by the consent of the parties of the first part. In all cases where corn is contracted for, the parties of the second part are to consult the parties of the first part as to the price to be paid, and if the first parties give consent to buy the corn on contract, then the first parties are to take it and pay for the same at the contract price, when delivered in the crib, and if it is necessary to advance any money on the corn so contracted for, before it is delivered, such money is to be advanced by the parties of the second part, and at their risk, and without interest, but the parties of the first part are to refund such money so advanced to the second parties when the corn is delivered in the crib at Stewartsville. The said parties of the first part agree to pay the parties of the second part three and three-fourths cents per bushel as full compensation for all the corn purchased, cribbed, shelled and carred for the parties of the first part. The three and three-fourths cents per bushel to be paid by the first parties to the second parties for the labor of purchasing, shelling, cribbing and carring of such corn, is to be paid when returns are had from the corn. It is also agreed that the said parties of the second part may take eastern weights or weigh the same in their warehouse, at their option. It is also agreed between the parties that in case eastern weights are taken, the parties of the first part are to lose all wastage through leakage, wrecks of cars, etc. The parties of the second part are at no time to furnish crib-room for more than 20,000 bushels. The said parties of .the second part agree to shell and car the said corn at such times as the parties of the first part shall direct; provided, always, the demands

are not in excess of the capacity of the sheller and storage-room in warehouse. If cars cannot be obtained, no advantage to be taken by either party.

Thomas Stephens.<br>
B. F. Stephens.<br>
Ed. G. Sheldon & Co.

Stewartsville, Missouri, November 27th, 1876.

On which written agreement are the following indorsements, which were also read in evidence:

By mutual agreement, we, the parties above designated, as parties of the first part and parties of the second party, agree that the above mentioned storage shall be reduced to 10,000 bushels.

Thos. Stephens.<br>
B. F. Stephens.<br>
Ed. G. Sheldon & Co.

We hereby release the parties of the second part from any further obligation to purchase corn for the parties of the first part on the within contract from this date.

B. F. Stephens & Co.

Stewartsville, Missouri, February 26th, 1877.

Gibson, Illinois, March 5th, 1877.

Mr. Sheldon & Co.:

*Dear Sir:* My son is at home and tells me he has released you from buying any more corn, which is all right, but I wanted the time of shelling the corn to be extended say sixty or seventy days longer in case we should wish it, which I think we will want to shell the most of it after June, for the way the market is now we will be bound to lose money if we ship any ways soon. I hope you will not object to giving us longer time to sell and ship in, for it is no disadvantage to you, for the corn will not shrink any after June. Please answer and tell me what you will do in regard to this matter.

Yours respectfully,<br>
Thos. Stephens.

P. S.—If the price of corn gets up a little in the east and we can get a fair rate in freights, perhaps some of us will be out in April or May, and perhaps get you to buy some more corn for us all summer.

STEWARTSVILLE, March 7th, 1877.

MR. THOMAS STEPHENS:

*Dear Sir :* Yours received. We are willing to do anything that is consistent in regard to extending your time for shelling, for the market at present is flat and we do not wish you to lose any money. We have been working all winter and have received no pay, and don't feel inclined to put off pay-day, but will make this proposition: We will extend your time to September 1st, 1877, if you will pay us two and three-fourths cents per bushel on the contract and release our storage by June 1st, or pay us for the same. We will then commence shelling for you at any time after fifteen days' notice up to September 1st, when the remaining one cent per bushel will be paid as per contract.

Yours respectfully,

ED. G. SHELDON & Co.

GIBSON, ILLINOIS, March 12th, 1877.

MR. ED. G. SHELDON & Co., Stewartsville :

*Gentlemen :* Yours of the 7th inst. received, and speaks like honorable men. You say you are willing to extend the time of shelling the corn we have until the 1st day of September, by us paying two and three-fourths cents per bushel of the commission we are to pay you by June 1st, and release your storage by that time, or pay you for storage after June 1st, which we are willing to pay you the two and three-fourths cents, and if we need your cribs longer than June 1st, we will pay you for it. Will do anything that is fair and honorable in all our dealings. You have now in your hands the money for the corn you shelled out of the warehouse, which can go toward the two and three-fourths cents per bushel. I do not know the amount of corn you shelled out of the warehouse. I suppose you

have it, and the balance, if any, we will pay you to make up the two and three-fourths cents when we come out, which will be before June 1st. So we will consider the time for shelling the corn extended until September 1st, in case we want to hold our corn until after June. But of course we expect you to shell at any time we wish from this date until September 1st, by us letting you know fifteen days beforehand, but we don't expect to want you to shell any corn in June unless the market gets up and freights down. I would like if anything happens any of the cribs before we get out, you would fix them and keep an eye on the corn for us. By so doing you will much oblige and will be well paid, etc.

Yours respectfully,

THOMAS STEPHENS.

STEWARTSVILLE, MISSOURI, March 19th, 1877.
THOMAS STEPHENS, ESQ.:

*Dear Sir:* Yours of the 12th received, we consider now, as you say, the time extended to September 1st, by your paying us as stated by June 1st. We will have to insist on your emptying our cribs in front of the store, as we need the use of them badly, on or before June 1st. We can't extend the time on them. In regard to the corn we shelled out of the warehouse, we returned you the same amount in your cribs and in the stable, and at the present time, nor at any previous time, have we had any of your money. Your son Frank will know that this is the case. Would also say that we are about selling our large sheller, as we do not wish to carry it over. It won't pay us to run two, and the little one is best adapted to our wants; would be glad to see you out soon.

Yours respectfully,

ED. G. SHELDON & Co.

GIBSON, ILLINOIS, March 26th, 1877.
MR. SHELDON & Co., Stewartsville, Missouri:

*Gents:* Yours of the 19th inst. received, in which you

say that we may consider the time for shelling the corn extended to September 1st, which is satisfactory to me. But you say you will need your cribs by June 1st, which I will try to empty some crib, if possible, either one of mine or yours, to give you room. I will do anything to accommodate; also you say you are talking of selling your large sheller; if so, it will discommode perhaps both of us, for when we get to shelling we will want to shell pretty fast, and perhaps you might want to shell at the same time, and the small sheller would not answer both of us. So I would like if you would be prepared to shell pretty fast when I commence shelling. I don't believe we will get prices so we can make money before July or August, and perhaps not then, but I will be out in May, if not before, and make all things satisfactory between us, and if any chance of making money on corn, will want to buy more corn, and will get you to buy for us if we can agree. Please notice our cribs, and if any of them are likely to burst open, please make them safe at our expense. In April or May corn swells and then they will burst, if at all.

Yours respectfully,<br>Thos. Stephens.

After this contract was submitted in evidence, the plaintiffs proved that they had purchased and delivered to defendants under it prior to February 26th, 1877, 40,438 bushels of corn. No evidence being offered by defendants, the court instructed the jury that the plaintiffs were entitled to recover at the rate of two and three-fourths cents per bushel on the amount so delivered, with interest from the commencement of the suit. The court refused the following instructions asked by defendants:

1. Under the pleadings and evidence in this case the plaintiffs cannot recover.

2. The contract read in evidence gave the option to defendants to extend the time for the completion thereof in shelling and delivering the corn in question to the 1st day

of September, 1877, and from the letters read in evidence purporting to extend the time for shelling and delivering the corn named on the cars to the 1st day of September, 1877, there was no consideration for the promise in said letters contained, to pay before the 1st day of September, 1877.

The jury returned a verdict in favor of plaintiffs and judgment entered on it for the sum of $1,262.31 and costs, from which the defendants appeal.

It thus appears from the instructions asked by defendants that they did not concede any right of action on the contract to plaintiffs before the 1st day of September, 1877. Now, according to the language of the letters modifying the original contract, the intention of making two and three-fourths cents per bushel payable on the 1st day of June, 1877, is clearly expressed. That intention is admitted by defendants. But they contend that this modification is void and not binding for want of a consideration. It is argued that the only consideration upon which it rests consists of an extension of the time for shelling the corn to September 1st, 1877, and that under the contract before modification, they possessed that identical right already. It, therefore, becomes necessary for us to examine more closely the provisions of the original contract, which are claimed to furnish them with the right to so extend the time of shelling the corn on hand prior to March 26th, 1877. I do not perceive how this right of extension can be derived from the provision, which reads as follows: " That the said parties of the first part hereby agree to furnish money to pay for all the corn that said parties of the second part are able to purchase for the parties of the first part, the same to be delivered at the town of Stewartsville, from this date until the 1st day of June, 1877, or if the parties of the first part wish to extend the time until the 1st day of September, 1877, they may do so at their option." It is true a right of extension is reserved to defendants, but it relates only to the purchase and delivery of corn, and

says nothing about shelling or loading. Any extension of time for shelling and loading contained in this provision, would have to be incident to purchases made in pursuance of an extension of time for the purpose of purchase and delivery, for no other extension is provided for, and no other can be implied. And as the plaintiffs were relieved from purchasing any more, there would remain nothing for the option of extension to act upon. There could be no extension of time for purchases as contemplated in the provision, and for that reason no implied extension of time for shelling and loading. The instruction of defendants which assumed that they had the right to extend the time for shelling and loading till September 1st, 1877, by virtue of this provision, was properly refused. That part of the original contract which reads: "The said parties of the second part agree to shell and car the said corn at such times as the parties of the first part shall direct; provided, always, the demands are not in excess of the capacity of the sheller and storage room in warehouse. If cars cannot be obtained, no advantage to be taken by either party," is not so easily disposed of. Upon its face it would seem to give to defendants an unlimited range of time within which they should have the privilege of directing the plaintiffs to shell the corn purchased and delivered. But of course such a latitude of privilege would be unreasonable. The provision is subordinate to the chief object and purpose of the contract. It is claimed by plaintiffs that they had the right to shell this corn within the period over which the contract extended by its original terms, and that the defendants could direct the particular times for shelling within that period. Such is the construction placed upon the contract by both parties in their written correspondence. As business men dealing with each other about the subject matter of their contract, and corresponding in the deliberate form of written letters about this very matter of time for shelling under the contract, their construction of its meaning is entitled to great weight, and I am inclined to accept it as

the correct one, especially as the controversy is solely between the parties who have adopted that construction. But I am satisfied that either their construction is the correct one or another construction, not more favorable to defendants, which must be the ultimate one furnished by the law when contracts omit definitely the time within which performance is to be effected and covenants fulfilled. No time being expressed in this contract within which the defendants were required to direct the shelling of the corn, the law would impose on them the obligation to do it within a reasonable time after delivery of the corn, to be determined by all the circumstances of the case. Under this construction they would not have the right to delay the shelling till September, 1877, but only a reasonable time under all the circumstances of the case, after the 26th day of February, 1877, which might and very probably would fall greatly short of September, 1877. Therefore, in surrendering the time for shelling, and accepting the time extended to September 1st, 1877, the plaintiffs surrendered their right to shell within a reasonable time after delivery, and accepted a fixed and definite time, which compelled them to shell at any time before September 1st, 1877, upon fifteen days' notice. This was the surrender of a valuable right under the contract, which was treated as such by the defendants, and for which they were willing to pay the greater portion of the commissions coming to plaintiffs by the 1st day of June, 1877, and before the shelling and loading was completed. It follows that under the only two constructions of which the contract is susceptible, the modification which required the defendants to pay part commissions on the 1st, day of June, 1877, is supported by a valuable consideration and was properly enforced at the trial. Having held that the modification of the contract was a valid one, it is unnecessary to consider the point about the variance between the petition and the proofs. The petition sets out the contract according to its legal effect as

produced by the modification, and there was no material variance.

The judgment is affirmed.    All concur.